United States District Court
Southern District of Texas
**ENTERED**
October 26, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KERTRELL ROBBINS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2625 |
| | § | |
| MEGAN J. BRENNAN, Postmaster | § | |
| General, | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 27] filed by Defendant Megan J. Brennan, United States Postmaster General. Plaintiff Kertrell Robbins filed a Response [Doc. # 36], Defendant filed a Reply [Doc. # 43], and Plaintiff filed a Sur-Reply [Doc. # 46]. The Court has carefully reviewed the record in this case. Based on that review and the application of relevant legal authorities, the Court **grants** Defendant's Motion.

## I.     BACKGROUND

Plaintiff, an African-American male, began his employment with the United States Postal Service ("USPS") as a Transitional Employee in Houston, Texas, on November 8, 2008. Transitional Employees are non-career bargaining unit employees who are appointed to a term of employment not to exceed 360 days. There is a break of at least five (5) days between appointments.

On April 19, 2010, Plaintiff received a Notice of Removal ("NOR") for unsatisfactory attendance.  *See* Notice of Removal, Exh. 16 to Motion.  On May 4, 2010, the removal was abated conditioned on Plaintiff having no more than two unscheduled absences in the future.  *See* Informal "Step A" Resolution Settlement, Exh. 17 to Motion.

**A.    2010 Removal**

On June 18, 2010, a customer reported seeing Plaintiff put gasoline into his personal vehicle and pay for it with a government gas card.  *See* Exh. 18 to Motion.  An investigation revealed a receipt for the purchase of 11.8 gallons of gasoline on June 18, 2010, purportedly for Plaintiff's assigned vehicle that has a 12-gallon capacity.  The purchaser used the gasoline credit card PIN assigned to Gail Isley, a USPS supervisor.  Shortly after the customer's report on June 18, 2010, USPS management took possession of the Postal Service vehicle assigned to Plaintiff that day.  The gas tank was only half full even though Plaintiff had just purchased 11.8 gallons of gasoline.  *See id.*  Gail Isley stated that she had not given Plaintiff permission to use her PIN.  *See* Exh. 23 to Motion.

On July 21, 2010, the USPS issued a Disciplinary Action Proposal based on the allegation that Plaintiff used Isley's PIN to put gasoline into his personal vehicle.  *See* Disciplinary Action Proposal, Exh. 25 to Motion.  On July 22, 2010, during an

investigative interview, Plaintiff denied putting gasoline into his personal vehicle. *See* Investigative Interview, Exh. 25 to Motion.  When questioned about using another employee's PIN, Plaintiff initially declined to answer and stated "This is bullshit I'm not answering nothing else." *See id.*  Later, however, Plaintiff admitted using other employees' PINs "with the supervisor's permission." *See id.*  On July 30, 2010, the USPS issued a NOR to Plaintiff for misuse of a government credit card by purchasing gasoline using another employee's PIN without permission. *See* Notice of Removal, Exh. 2 to Motion.

Plaintiff's initial Equal Employment Opportunity ("EEO") contact was on July 22, 2010. *See* Exh. 1 to Motion.  On July 30, 2010, Plaintiff filed an informal EEO complaint alleging "Filing a mixed-case appeal with the MSPB;[1] double jeopardy, discrimination against self." *See id.*  The EEO Investigative Service Office identified "gender" as the basis for the alleged discrimination. *See* Exh. 29 to Motion. Plaintiff did not object to this characterization of his complaint.

On September 23, 2010, Plaintiff withdrew his complaint. *See* Withdrawal of Complaint of Discrimination, Exh. 3 to Motion.  Plaintiff stated that he was withdrawing his allegations of discrimination "on the basis of sex (male)" and stipulated that the withdrawal of his complaint "did not result from threat, coercion,

---

[1]     Merit Service Protection Board

intimidation, promise or inducement." *See id.* Plaintiff's union representative was present at the time Plaintiff withdrew his complaint.[2]

November 2, 2010, was Plaintiff's last day "in pay status" with the USPS in Houston. His union filed a grievance on his behalf, which was settled on January 5, 2011. The settlement provided that Plaintiff would be paid $1,662.18 for the time remaining on his current appointment, that his contract would not be renewed, and that he would "not be hired by Postal Service." *See* Pre-Arbitration Agreement, Exh. 4 to Motion.

### B.    2012 Removal

Notwithstanding his agreement "not to be hired by [the] Postal Service," on February 15, 2012, Plaintiff applied for a position with the USPS in Katy, Texas. *See* Application for Employment, Exh. 6 to Motion. With reference to his Work History, Plaintiff stated in February 2012 that he had been employed by the USPS in Houston from "11-2008 - Present." *See id.* Plaintiff answered "No" to the questions "Have you ever been fired from any job for any reason?" and "Have you ever quit a job after being notified that you would be fired?" *See id.* Plaintiff certified that his answers

---

[2]    Although the union representative was not an attorney, a "labor union is assumed to have some degree of expertise in equal employment opportunity matters." *See Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F. 3d 698, 709 (5th Cir. 1994).

were "true, complete, and correct" and acknowledged that a false answer to any of the questions could be grounds for dismissal if he were hired.  *See id.*  During his interview with Brenda Johnson, a USPS supervisor, Plaintiff stated that he was one of 25 Transitional Employees who had been laid off and that he had "left on a high note."  *See* Disciplinary Action Proposal, Exh. 33, p. 3.  Plaintiff was hired by the USPS and began working at the Katy Post Office on April 9, 2012.

On July 31, 2012, Plaintiff requested time off to attend a family reunion on August 31, 2012, and September 1, 2012.  Johnson, Plaintiff's supervisor, denied the request.  Plaintiff called in sick on both days and provided a doctor's excuse.  Johnson checked Plaintiff's attendance records from his prior USPS employment, and she discovered his April 2010 NOR for unsatisfactory attendance.   Johnson also discovered the NOR from July 2010 and the settlement agreement from January 2011.

On September 24, 2012, Johnson conducted an investigative interview with Plaintiff in the presence of his union representative.  *See* Disciplinary Action Proposal, Exh. 37 to Motion.  In the interview, Plaintiff wrote that he was "never fired" and that he could not remember whether he received the July 30, 2010 NOR.  *See id.*  Plaintiff similarly could not remember whether he received the January 5, 2011 settlement agreement.  *See id.*  Johnson conducted a second investigative interview on October 3, 2012, again in the presence of Plaintiff's union representative.  *See* Disciplinary

Action Proposal, Exh. 33 to Motion.  At that time, Plaintiff admitted receiving the $1,662.18 to settle the union's grievance.  *See id.*

On September 25, 2012, Plaintiff contacted an EEO counselor and alleged retaliation for prior EEO activity.

The USPS issued a formal Disciplinary Action Proposal on October 10, 2012. *See id.*  On October 15, 2012, the USPS issued a NOR to Plaintiff for not being truthful in his application and interview, advising Plaintiff that his last date of employment with the USPS would be November 23, 2012.  *See* Notice of Removal, Exh. 7 to Motion.  Plaintiff's union filed a grievance on his behalf.  The grievance was denied on November 30, 2012, and the denial was not appealed.  On December 20, 2012, Plaintiff filed a formal EEO Complaint alleging sex discrimination and retaliation.  *See* EEO Complaint of Discrimination, Exh. 8 to Motion.

On December 7, 2012, Plaintiff attempted to amend his EEO pre-complaint counseling form to add a claim that he became aware on November 27, 2012, that the "Withdrawal of Complaint of Discrimination" form signed in September 2010 was signed under duress.[3]  *See* Information for Pre-Complaint Counseling, Exh. 41 to

---

[3]     Defendant argues that Plaintiff's withdrawal of his 2010 EEO complaint renders his gender discrimination claim unexhausted as to the 2010 removal.  Plaintiff argues that the withdrawal was under duress.  As explained below, the gender discrimination claim regarding the 2010 removal fails on the merits.  Therefore, the Court need not rule on the validity of Plaintiff's 2010 "Withdrawal of Complaint of Discrimination."

Motion.  The EEO Investigative Services Office advised Plaintiff that it would not accept the proposed amendment alleging duress, and that the allegation must be presented in writing to the Manager of EEO Compliance and Appeals, Southern Area. *See* Acceptance for Investigation, Exh. 44 to Motion.  On May 20, 2014, the EEO Compliance and Appeals Manager notified Plaintiff that he had determined Plaintiff made an informed decision to withdraw his complaint in 2010 and, therefore, the 2010 complaint remained closed.  *See* Letter dated May 20, 2014, Exh. 43 to Motion.

On September 20, 2014, the EEOC granted summary judgment in favor of the USPS on Plaintiff's 2012 EEO complaint. *See* Order Entering Judgment and Decision Without Hearing, Exh. 10 to Motion.  The Administrative Law Judge found that Plaintiff failed to prove either sex discrimination or retaliation.  *See id.*

On October 9, 2014, the USPS issued its Notice of Final Action in accordance with the Administrative Law Judge's decision.  Plaintiff appealed to the EEOC Office of Federal Operations, which dismissed the appeal when Plaintiff filed this lawsuit.

On September 12, 2014, Plaintiff filed this lawsuit *pro se* alleging only that he was falsely accused of stealing gas. *See* Complaint [Doc. # 1], ¶ 7.  On May 18, 2015, Plaintiff through counsel filed his First Amended Complaint asserting causes of action for gender discrimination, race discrimination, retaliation, and a due process violation. *See* First Amended Complaint [Doc. # 16].  After a period of more than one year to

conduct discovery, Defendant filed the pending Motion for Summary Judgment.  The

Motion has been fully briefed and is now ripe for decision.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of

summary judgment against a plaintiff who fails to make a sufficient showing of the

existence of an element essential to his case and on which he will bear the burden at

trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710

F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.

1994) (*en banc*).   Summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d

at 594.

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue

of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699

F.3d 832, 839 (5th Cir. 2012).  The moving party, however, "need not negate the

elements of the nonmovant's case."  *Coastal Agric. Supply, Inc. v. JP Morgan Chase

Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp.*

*Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).  "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and

otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med.*
*Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

## III.   <u>GENDER DISCRIMINATION CLAIM</u>

Plaintiff alleges that his removals in 2010 and in 2012 were the result of gender
discrimination in violation of Title VII.  Plaintiff can establish his discriminatory
discharge claim through direct or circumstantial evidence.  *See Heggemeier v.*
*Caldwell County*, 826 F.3d 861, 867 (5th Cir. 2016) (citing *McCoy v. City of*
*Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).  Because Plaintiff in this case relies
on circumstantial evidence, his claim is analyzed under the *McDonnell Douglas*
burden-shifting framework. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.
792, 802 (1973)).  Under this framework, Plaintiff must first establish a *prima facie*
case of discrimination and, if he does so, there arises a presumption of discrimination
and the employer must articulate a legitimate, non-discriminatory reason for its
removal decision. *Id*.  If the employer meets this burden of production, Plaintiff must
present evidence that Defendant's articulated reason is a pretext for discrimination.
*Id*.

***Prima Facie Case*.–**  To establish a *prima facie* case of gender discrimination
in connection with the termination of employment for alleged misconduct, Plaintiff
must present evidence that:

(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  It is undisputed that Plaintiff is male and, therefore, is a member of a protected class.  It is undisputed that he was qualified for the positions he held with the USPS, and that his removals were adverse employment actions.

Plaintiff has failed to present evidence, however, that his gender caused him to be treated less favorably than similarly situated female employees under nearly identical circumstances.  To demonstrate the fourth element of the *prima facie* case, Plaintiff must identify a similarly-situated employee who is not a member of his protected class.  *Id.*  Additionally, "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Heggemeier*, 2016 WL 3457260 at *3 (quoting *Lee*, 574 F.3d at 260).

With reference to the 2010 removal, Plaintiff in the EEO process and in his Response identified three comparators – two male and one female.  The two males are

members of Plaintiff's protected class and, therefore, do not support a *prima facie* case of gender discrimination.   The female comparator, who reported to a different supervisor than Plaintiff did, allegedly was once intoxicated when she reported to work.   This alleged misconduct is not "nearly identical" to Plaintiff's misuse of a government gasoline credit card.   Additionally, Plaintiff alleges, without supporting evidence, that there were many USPS employees who used other employees' PINs. Plaintiff has not, however, identified any female USPS employees who used another employee's PIN ***without permission***.   Absent evidence of a similarly-situated female USPS employee who was treated more favorably than he, Plaintiff has failed to present evidence to support a *prima facie* case of gender discrimination in connection with his 2010 removal.

Plaintiff has similarly failed to present evidence of any female USPS employees who were treated more favorably than he in connection with his 2012 removal. Plaintiff has not identified any female employees who provided false statements on their application and during their pre-employment interview who were not removed from their employment.  Consequently, Plaintiff has not presented evidence to support a *prima facie* case of gender discrimination in connection with the 2012 removal.

Plaintiff has failed to identify or present evidence of a similarly-situated female employee with the USPS who was treated more favorably than he under nearly

identical circumstances.  As a result, he has not established a *prima facie* case of gender discrimination in connection with the 2010 removal or the 2012 removal. Defendant's Motion for Summary Judgment on this claim is granted on this basis.

**_Pretext._–** As a separate basis for summary judgment in favor of Defendant, Plaintiff has failed to present evidence that raises a genuine issue of material fact on the issue of pretext.  Defendant has articulated a legitimate non-discriminatory reason for its decisions to remove Plaintiff in 2010 and in 2012.  Plaintiff was removed in 2010 for using another employee's PIN without permission.  Plaintiff was removed in 2012 for having provided false statements in his application and his pre-employment interview.  Therefore, to avoid summary judgment in favor of Defendant on his gender discrimination claim, Plaintiff must present evidence from which a reasonable factfinder could conclude that Defendant's explanation was a pretext for discrimination.  A plaintiff's subjective speculation that he was fired because of his protected status is not evidence that the true reason for his discharge was discrimination. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010);  *Strahan v. Waste Mgmt.*, 539 F. App'x 331, 332 (5th Cir. Aug. 19, 2013) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004)).

With reference to the 2010 removal, Plaintiff admits that he used Isley's PIN, and he has presented no evidence that suggests gender discrimination was the true

reason for his removal.  With reference to the 2012 removal, Plaintiff's statements in his application and interview were demonstrably false.  Plaintiff argues that Defendant's explanation is pretextual because he was not "fired" in 2010.[4]  Plaintiff's argument is unpersuasive.  Plaintiff made statements in his application and during his pre-employment interview that he was one of 25 Transitional Employees who were laid off, that he left his position with the USPS "on a high note," and that he had not quit a job after being notified that he would be fired.  These statements are not rendered truthful simply because Plaintiff was permitted to end his Transitional Employee appointment with the USPS to avoid imposition of the Notice of Removal.

Defendant has articulated a legitimate, non-discriminatory reason for the 2010 removal and the 2012 removal.  Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding whether these explanations are false and pretextual.  As a result, on this basis also, Defendant's Motion for Summary Judgment on the gender discrimination claim is granted.

## IV. RACE DISCRIMINATION CLAIM

A federal employee must exhaust administrative remedies prior to filing a lawsuit in federal court.  *See Francis v. Brown*, 58 F.3d 191, 192 (5th Cir. 1995);

---

[4]     Plaintiff in his Response argues also that no other rural carrier associate at the Katy Post Office has ever been removed for the first unscheduled absence.  Plaintiff was not removed for his unscheduled absence.

*Thomas v. Napolitano*, 449 F. App'x 373, 374-75 (5th Cir. Nov. 9, 2011).  To exhaust

his administrative remedies, a federal employee first must "'initiate contact' with an

Equal Employment Opportunity counselor at his agency 'within 45 days of the date

of the matter alleged to be discriminatory.'"  *Green v. Brennan*, __ U.S. __, 136 S. Ct.

1769, 1774 (2016) (quoting 29 CFR § 1614.105(a)(1)).   If the matter is not resolved

after the mandatory counseling period, the federal employee has the choice of

appealing the decision to the EEOC Office of Review and Appeals or filing suit in

federal district court.  *See Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990).

If the employee chooses to appeal, he must file a formal written administrative

complaint with the EEOC within fifteen days of the EEO counselor's notice of final

interview and right to file a formal complaint.  If the appeal is unsuccessful, the

federal employee may proceed to federal court and file a Title VII civil action

(a) within ninety days of the notice of a final agency decision on the EEOC complaint

or (b) after 180 days from the filing of the EEOC complaint if the Commission has not

yet issued a decision.  *See id.*

The scope of the complaint is limited to the discrimination stated in the charge

and issues that could reasonably be developed during the EEOC investigation.  *See*

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd of San Antonio*, 40 F.3d 698, 712

(5th Cir. 1994); *see also Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395

(5th Cir. 2000) (holding that the "scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"). "Although courts read the EEOC charges rather broadly to determine what EEOC investigations it can reasonably be expected to trigger, a failure to reference a claim in that charge may defeat that claim." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 852 (S.D. Tex. 2010).

In this case, it is undisputed that Plaintiff did not allege race discrimination in connection with any EEO activity regarding his 2010 or 2012 removals. In his two EEO complaints, he neither marked "Race" as a basis for his EEO charge nor alleged facts that would support a race discrimination claim. Indeed, his EEO complaint in 2010 did not identify any basis for the alleged "discrimination against self." The EEO Investigative Service Office identified "gender" as the alleged basis, and Plaintiff did not object to that characterization of this complaint. As a result, Plaintiff has not exhausted his race discrimination claim.

Plaintiff argues that he is entitled to equitable relief from the 45-day period because Defendant coerced him into withdrawing his grievance. Plaintiff is not entitled to such equitable relief, however, because he has neither alleged nor presented evidence that the USPS concealed facts from him or affirmatively misled him regarding the reason for his removal. *See Manning v. Chevron Chem. Co., LLC*, 332

F.3d 874, 880 (5th Cir. 2003) (holding that "[w]e equitably toll a limitations period only when the employer's affirmative acts mislead the employee and induce him not to act within the limitations period"); *Ramirez v. City of San Antonio*, 312 F.3d 178, 184 (5th Cir.2002) ("A court will equitably toll a limitations period only when the employer's affirmative acts mislead the employee.").

Plaintiff failed to assert a race-based discrimination claim within 45 days after his removal.  Indeed, Plaintiff failed to assert a race-based discrimination claim in his original Complaint and did not do so until he filed his First Amended Complaint on May 18, 2015.  As a result, his race discrimination claim is unexhausted.  Absent allegations or evidence that would support equitable tolling or estoppel, Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.

## V.    RETALIATION CLAM

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) he participated in a protected activity, (2) he suffered an adverse employment action, and (3) there exists a causal connection between the protected activity and the adverse action.  *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009); *Wu v. Miss. State Univ.*, 626 F. App'x 535, 537 (5th Cir. Sept. 29, 2015).  The third element requires "but-for causation," meaning proof that the adverse action would not have occurred without the employee's protected activity. *Univ. of*

*Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2533 (2013); *Wu*, 626 F.

App'x at 537.  If Plaintiff establishes a *prima facie* case of retaliation, the burden then

shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse

employment action.  *Wu*, 626 F. App'x at 737 (citing *Long v. Eastfield Coll.*, 88 F.3d

300, 304-05 (5th Cir. 1996)).  The burden then falls on Plaintiff to establish that the

explanation is pretextual and that, "but for" his protected activity, he would not have

suffered the adverse employment action.  *See Porter v. Houma Terrebonne Housing

Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (citations omitted).

Plaintiff has presented evidence that he engaged in activity protected under

Title VII.  Specifically, Plaintiff has presented evidence that in 2010 he had an initial

EEO contact on July 22 and filed an informal EEO complaint on July 30.  Plaintiff has

presented evidence that in 2012 he contacted an EEO counselor on September 25,

attempted to amend his EEO pre-complaint counseling form on December 7, and filed

an EEO complaint on December 20.  There is no dispute that Plaintiff's removals in

2010 and 2012 were adverse employment actions.

On the causal connection element of his retaliation claim, the chronology

refutes Plaintiff's retaliation claim regarding his removals.  In 2010, the Disciplinary

Action Proposal was issued on July 21, 2010.  It was not until the next day, July 22,

2010, that Plaintiff first contacted an EEO counselor.

With reference to the 2012 removal, Johnson conducted the first investigative interview with Plaintiff on September 24, 2012. The next day, September 25, 2012, Plaintiff had his initial contact with the EEO. Additionally, there is no evidence that Johnson, the decision maker in 2012, knew of Plaintiff's 2010 EEO activity prior to beginning her investigation and issuing the Disciplinary Action Proposal. The settlement agreement of which Johnson had knowledge involved the settlement of the union's grievance of Plaintiff's removal, not any activity that is protected under Title VII. There is similarly no evidence that Johnson knew of Plaintiff's September 25, 2012, EEO contact when she began her investigation, or when the Notice of Removal was issued on October 15, 2012, advising Plaintiff that his last date of employment would be November 23, 2012. Plaintiff did not file his formal EEO complaint until December 20, 2012. Plaintiff has presented no evidence that raises a genuine issue of material fact regarding a causal connection between any of his EEO activity and his 2010 or 2012 removals. On this basis, Defendant is entitled to summary judgment on Defendant's retaliation claim.

Even if Plaintiff were able to establish a *prima facie* case of retaliation, as discussed above in connection with the gender discrimination claim, Defendant has articulated a legitimate, non-retaliatory reason for its removal decisions in 2010 and 2012. As discussed above, Plaintiff has presented no evidence that Defendant's

explanations are false and that retaliation was the true reason for the removal decisions.   On this basis also, Defendant's Motion for Summary Judgment on the retaliation claim is granted.

## VI.   <u>DUE PROCESS CLAIM</u>

Plaintiff alleges that Defendant violated his right to procedural due process in connection with his removals.  Defendant moved for summary judgment on this claim as preempted by Title VII.   Plaintiff did not address the due process claim in his Response or his Sur-Reply.

"Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees."  *Jackson v. Widnall*, 99 F.3d 710, 715 (5th Cir. 1996) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976)); *see also Scott v. U.S. Dept. of Agric.*, 2013 WL 5890613, *1 (E.D. La. Nov. 1, 2013); *Wilkerson v. Snow*, 2003 WL 21528235, *4 (N.D. Tex. June 30, 2003).  As a result, Defendant is entitled to summary judgment on Plaintiff's due process claim based on the 2010 and 2012 removals which are covered by Plaintiff's Title VII claims.

## VII.   <u>CONCLUSION AND ORDER</u>

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of his gender discrimination and retaliation claims.  Plaintiff failed to

exhaust his administrative remedies with respect to his race discrimination claim.  His

due process claim is preempted by Title VII.  As a result, it is hereby

     **ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 27] is

**GRANTED**.  The Court will issue a separate final judgment.

     SIGNED at Houston, Texas, this 26th day of **October, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE